IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADELINE SAND & GRAVEL, LLC, | ) |
| Petitioner, | ) |
| v. | ) No. 09 CV 7594 |
| | ) Hon. Charles R. Norgle |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION NO. 150, AFFILIATED WITH THE AFL-CIO, | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Before the Court is Petitioner Adeline Sand & Gravel, LLC's ("Adeline, LLC") Petition to Vacate And/Or Modify Arbitration Award. Also before the Court is International Union of Operating Engineers, Local Union No. 150, Affiliated with the AFL-CIO's (the "Union") counterclaim to enforce the Joint Grievance Committee ("JGC") Award. For the following reasons, Adeline, LLC's petition to vacate is denied and the Union's petition to enforce the JGC Award is granted.

**I. BACKGROUND**

**A. Facts[1]**

This case revolves around a dispute over a JGC grievance award entered against the owner and employer of a gravel pit located at 8431 N. Cherry Road in Forreston, Illinois (the "pit"), and in favor of the Union. On October 1, 2002, the then-owner of the pit, Adeline Sand & Gravel, Inc. ("Adeline, Inc."), entered into a collective bargaining agreement ("CBA") with the Union. (emphasis added). The CBA was effective from June 1, 2002 through May 31, 2006.

---

[1] The following facts are taken from Adeline, LLC's Mem. of Law in Supp. of Pet. to Vacate JGC Award and Resp't/Counter-Pl. Local 150's Resp. to Pet'r/Counter-Def. Adeline's Pet. to Vacate JGC Award.

The Secretary-Treasurer, Virgil Bocker ("Bocker"), and the President of Adeline, Inc., Delmar Kampen ("Kampen"), signed the CBA on behalf of the corporation. Pursuant to the CBA, Adeline, Inc. became a member of the Northwestern Illinois Contractors Association ("NICA"). NICA is "an employer association with power of attorney to negotiate on behalf of the member employers including Adeline, Inc." Resp't/Counter-Pl. Local 150's Resp. to Pet'r/Counter-Def. Adeline's Pet. to Vacate JGC Award 2. On September 14, 2006, NICA, on behalf of Adeline, Inc., entered into a successor agreement to the CBA with the Union effective June 1, 2006 through May 31, 2011. Glen Turpoff ("Turpoff"), the Executive Director of NICA, signed on behalf of NICA and by extension, its member employers. Aside from the operative dates, the successor agreement is identical to the original CBA between the Union and Adeline, Inc. During the time that Adeline, Inc. owned the pit, various grievances between it and the Union were filed and settled pursuant to the terms of the CBA and the successor agreement.

In 2009, Bocker, on behalf of Adeline, Inc., sent the Union a letter dated April 1, 2009—although it is unknown when the letter was actually sent or received—purporting to terminate the CBA entered into on October 1, 2002. Despite the alleged termination of the relationship, Adeline, Inc. settled a grievance with a Union involving employee Sheldon Lobdell ("Lobdell") on May 5, 2009. Yet another grievance regarding employee Jim Daws ("Daws") was settled as late as August 26, 2009—well after Adeline, Inc. allegedly terminated the CBA and sold the company.

On May 22, 2009, Adeline, Inc. sold the pit—including all assets, equipment, and land—to Dan and Paula Ellberg (the "Ellberg's"). Shortly thereafter, and pursuant to the sale agreement, the Ellberg's began operating the pit under the name Adeline Sand & Gravel, LLC.

(emphasis added). Four days later, on May 26, 2009, Adeline Sand & Gravel, <u>Inc.</u> changed its name to Bocker & Kampen Enterprises, Inc. ("B&K"). (emphasis added).

Before the sale, the employees working at the pit for Adeline, Inc. included: (1) Minerva Freeze ("Freeze"), the officer manager/secretary; (2) Lee Runte ("Runte"), a driver/loader/mechanic, who was replaced by Daws shortly before the sale; (3) Lobdell, a Union member and driver/loader/mechanic; and (4) Daws, a permit employee, seeking membership in the Union, who replaced Runte as a driver/loader/mechanic. After being replaced by Daws, but before the sale, Runte worked at Kampen Farms, which was owned by Kampen of B&K, formerly Adeline, Inc. Immediately following the sale, Adeline, LLC hired Freeze to work as its office manager, and hired Runte to work as a driver/loader/mechanic. Shortly thereafter, Adeline, LLC also hired Union-member Jamie Diehl ("Diehl").

Following the sale, an attorney for B&K (formerly Adeline, Inc.) sent the Union a letter dated May 28, 2009, informing it of the sale of the pit and Adeline, Inc.'s name-change to Bocker & Kampen Enterprises, Inc. However, the Union continued to send all correspondence for Bocker, Kampen, Adeline, Inc., and "Adeline Sand & Gravel" to the pit, now owned by Adeline, LLC. Initially, Freeze would forward all mail from the Union to B&K's new business address. On August 28, 2009, Freeze sent the Union a fax stating that Bocker, Kampen, and Adeline, Inc. were no longer located at the pit and that she would refuse all future correspondence addressed to them. Nevertheless, the Union continued to send correspondence to the pit addressed to "Adeline Sand & Gravel," without indicating whether it was referring to Adeline, Inc. or Adeline, LLC. Freeze continued to refuse all mail from the Union and Union members.

On August 31, 2009, the Union sent notice to "Adeline Sand & Gravel" at the pit, informing it of two upcoming JGC hearings that were scheduled to take place on September 8, 2009. On the day of the hearing, no representatives from B&K (formerly Adeline, Inc.) or Adeline, LLC appeared. The JGC found in favor of the Union on both grievances and awarded the Union $43,440 on one grievance and $27,874 on the other, for a total of $71,314 to be paid by the employer. The following day, the JGC sent a letter detailing the award to "Adeline Sand & Gravel" at the pit. Adeline, LLC denies that it received this letter.

In October of 2009, the Union was picketing Adeline, LLC in front of the pit. As a result, an attorney for Adeline, LLC contacted an attorney for the Union to discuss the picketing. During the conversation, the Union's attorney informed the attorney for Adeline, LLC that a JGC award had been entered against Adeline, LLC in September of 2009. Following this conversation, on October 20, 2009, an attorney for Adeline, LLC sent a letter to the Union disputing the award and stating that it was not, and is not a party to the CBA or a successor thereto. The Union replied contending that Adeline, LLC is bound by the CBA/successor agreement and the JGC award.

**B. Procedural History**

The dispute continued between Adeline, LLC and the Union, culminating in Adeline, LLC's filing of its Petition to Vacate and/or Modify Arbitration Award on December 7, 2009. The same day, B&K (formerly Adeline, Inc.) filed a similar motion to vacate the same JGC award in a related case, Bocker & Kampen Enterprises, Inc. v. International Union of Operating Engineers, Local 150, No. 09-CV-7574 (N.D. Ill. filed Dec. 7, 2009) [hereinafter Case No. 09-7574]. Case No. 09-7574 was consolidated with this case on May 13, 2010. Following the consolidation, the briefing of the respective petitions to vacate proceeded together; and, as a

result, the parties incorporate arguments contained in the briefs filed in the consolidated case as filed herein.

On February 22, 2013, Case No. 09-7574 was dismissed with prejudice pursuant to a stipulation to dismiss. The stipulation to dismiss and corresponding dismissal order had no force or effect on this case. On March 29, 2010, Adeline, LLC filed the instant motion, which is fully briefed and before the Court.[2]

## II. DISCUSSION

### A. Standard of Decision

"[A] joint committee is not a genuine arbitration subject to the Federal Arbitration Act (FAA) and the full requirements of impartiality that apply to genuine arbitration." Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Local 150, 639 F.3d 286, 290 (7th Cir. 2011). Rather, "failure to comply with a joint committee award is a breach of a federal labor contract subject to section 301" of the Labor Management Relations Act, 29 U.S.C. § 301. Id.

A court's consideration of a joint grievance committee's underlying decision is deferential—"as long as the parties agreed that this method of dispute resolution would be binding, it is 'not open to the courts to reweigh the merits of the grievance.'" Id. at 289 (quoting Gen. Drivers, Warehousemen & Helpers, Local 89 v. Riss & Co., 372 U.S. 517, 519 (1963)). "The Court may not consider the disputants' arguments afresh, nor may it overturn the arbitrator's decision on the ground that the arbitrator committed serious error." Ganton Techs. v. UAW, Local 627, 358 F.3d 459, 462 (7th Cir. 2004) (internal quotation marks and citations omitted). "Rather, the role of the reviewing court is to determine whether the arbitrator's award

---

[2] Although this matter became fully briefed on December 15, 2010, the parties failed to take any action to move this case to resolution for approximately two and a half years until April 17, 2013 when the Court ordered an agreed written status report. This case was dismissed for want of prosecution on May 17, 2013; however, the Court granted the Union's motion to reconsider on June 21, 2013 and reinstated the case for ruling on the instant motion.

5

draws its essence from the collective bargaining agreement, and only if there is no possible interpretative route to the award, so [that] a noncontractual basis can be inferred, may the award be set aside." Id. (internal quotation marks and citations omitted). "The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award." Id.

**B. JGC Award**

The Union seeks enforcement of the JGC award entered against Adeline, LLC pursuant to the terms of the CBA and the successor agreement. Adeline, LLC contends that it is not liable for the JGC award entered against it and that the award should be vacated for the following reasons: (1) Adeline, LLC is not, and never has been, a party to a contract with the Union; (2) Adeline, LLC is not a successor or an alter ego of Adeline, Inc.; (3) the JGC exceeded its authority in considering events outside of the CBA; (4) the JGC award should be modified to reflect that is against Adeline, Inc., not Adeline, LLC; and (5) the CBA/successor agreement is unenforceable pursuant to the one-person rule.

As an initial matter, Adeline, LLC's argument that the award should be modified because the JGC made a mistake when it entered the award against Adeline, LLC, as opposed to Adeline, Inc., is without merit. There is no evidence to support that the award entered against "Adeline Sand & Gravel" was in error. Indeed, when the award was entered on September 8, 2009, Adeline, LLC was the owner of the pit and the only company using the name "Adeline Sand & Gravel." Adeline, Inc. had already changed its corporate name to Bocker & Kampen Enterprises, Inc. and notified the Union of the name-change before the Union even sent notice of the hearing to "Adeline Sand & Gravel" at the pit. Accordingly, the Court rejects this argument and, for the following reasons, the Court rejects Adeline, LLC's remaining arguments as well.

6

### 1. Whether Adeline, LLC has ever been a party to a contract with the Union

It is undisputed that Adeline, Inc., not Adeline, LLC, signed the original CBA with the Union on October 2, 2002. Likewise, it is undisputed that NICA, on behalf of Adeline, Inc., signed the successor agreement on September 14, 2006. Therefore, Adeline, LLC correctly notes that it was not a party to the contracts at the time in which they were signed. However, both agreements, which are substantially identical, state in Article XXIII, Sale of Lease of Assets: "This Agreement when executed by the parties herein, shall be binding upon the Union and Employer, <u>their successor, heirs, executors, administrators, receivers in bankruptcy, receivers in equity, trustees of any such other equivalent designee.</u>" Resp't/Counter-Pl. Local 150's Resp. to Pet'r/Counter-Def. Adeline's Pet. to Vacate JGC Award Ex. A, at 34; Ex. B, at 31 (emphasis added). Indeed, Adeline, LLC admits that the contract and the JGC award "could be enforced against Adeline [if] . . . Adeline was a successor or alter-ego entity to Adeline Sand & Gravel, Inc." Adeline, LLC's Mem. of Law in Supp. of Pet. to Vacate JGC Award 2. Accordingly, the fact that Adeline, LLC is not a signatory to the CBA or successor agreement is not an absolute bar to the enforcement of the contracts and JGC award at issue. As a successor or alter ego of Adeline, Inc., Adeline, LLC would be bound as a party to the CBA and successor agreement with the Union.

### 2. Whether Adeline, LLC is a successor or alter ego of Adeline, Inc.

The alter ego doctrine and the successor doctrine are both used to determine "whether one employer is required to bargain with a union that represented a former employer's employees." Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc., 831 F.2d 1309, 1313 (7th Cir. 1987). Both doctrines are also "applicable to enforcement of arbitration awards that are 'part and parcel of the collective bargaining process itself.'" Id.

7

(quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578 (1960)).

### a. Successor

"Under the National Labor Relations Act, a new employer, succeeding to the business of another, is obligated to bargain with the union representing the predecessor's employees." Shares, Inc. v. Nat'l Labor Relations Bd., 433 F.3d 939, 943 (7th Cir. 2006). To determine whether a new employer is a successor company to the former employer for purposes of enforcing a CBA or a JGC award, courts rely on a totality of the circumstances, focusing on "whether there is 'substantial continuity' between the enterprises." Fall River Dyeing & Finishing Corp. v. Nat'l Labor Relations Bd., 482 U.S. 27, 43 (1987). Factors to consider include: "whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers." Id. (citations omitted).

Adeline, LLC argues that its business is fundamentally different from Adeline, Inc. because it has new ownership and officers, new employees, and an expanded business model and customer base. It is true that ownership of "Adeline Sand & Gravel" has changed from Bocker and Kampen to the Ellberg's. Despite the change in ownership, however, "Adeline Sand & Gravel" remains substantially the same. While Adeline, LLC has acquired additional customers and now uses rail services to ship its product into the Chicago area, it still services the same small farms and businesses—including Kampen Farms—that it did while under the ownership of Adeline, Inc. The pit is still operated in the same manner—providing sand and gravel. In addition, the employees of "Adeline Sand & Gravel" remained substantially the same as two

thirds of Adeline, LLC's employees worked for Adeline, Inc. Adeline, Inc.'s employees included Freeze, Runte, Lobdell, and Daws, and Adeline, LLC hired Freeze, Runte, and Diehl. Based on the facts presented, it is clear that there was a substantial continuity of "Adeline Sand & Gravel" between Adeline, Inc. and Adeline, LLC. The Court therefore finds that Adeline, LLC is a successor to Adeline, Inc. for purposes of enforcing the CBA and JGC award.

### b. Alter Ego

Adeline, LLC is also bound by the terms of the CBA and successor agreement pursuant to the alter ego doctrine. "The alter ego doctrine focuses on 'the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets.'" Centor Contractors, Inc., 831 F.2d at 1312 (quoting Penntech Papers, Inc. v. Nat'l Labor Relations Bd., 706 F.2d 18, 24 (1st Cir. 1983)). The National Labor Relations Board has established seven factors that are relevant to determine whether a new employer is an alter ego of the former employer, which include whether the new employer has substantially identical: (1) management; (2) business purpose; (3) operation; (4) equipment; (5) customers; (6) supervision; and (7) ownership. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine, 161 F.3d 427, 433 (7th Cir. 1998). For the reasons discussed above, the Court finds that Adeline, LLC is an alter ego of Adeline, Inc.

### 3. Whether the JGC exceeded its authority

Next, Adeline, LLC argues that the award should be vacated because the JGC exceeded its authority in considering documents outside of the CBA. "It is well-established that, when arbitrators draw their conclusions from the applicable collective bargaining agreements, the awards are legitimate." Prate Installations, Inc. v. Chi. Reg'l Council of Carpenters, 607 F.3d 467, 471 (7th Cir. 2010) (citing Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593,

9

597 (1960)). Courts "give great deference to the arbitrator when reviewing interpretations of a CBA and all doubts should be resolved in favor of enforcing the award . . . even if [courts] are convinced that the arbitrator's error in interpreting the parties' agreement was plain, [courts] lack the authority to intervene." Id. (internal quotation marks and citations omitted).

Only the Union appeared at the hearing scheduled for September 8, 2009. Adeline, LLC's argument that it did not receive prior notice of the hearing is disingenuous. Adeline, LLC actively avoided notice by refusing all mail from the Union—even letters addressed to "Adeline Sand & Gravel," the name under which it was operating. Furthermore, Adeline, LLC and its owners were no strangers to dealings with the Union. Not only did Adeline, LLC know that Adeline, Inc. had signed a CBA with the Union, but Adeline, LLC also had its own dealings with the Union, including the picketing in front of the pit. Additionally, the Ellberg's—the owners of Adeline, LLC—dealt with the very same Union regarding labor practices at their other business, Indian Valley Timber Valley & Stone. Accordingly, the Court finds that the letter sent to the pit addressed to "Adeline Sand & Gravel" provided sufficient notice of the upcoming JGC hearing.

At the hearing, the Union allegedly presented evidence that no sale of "Adeline Sand & Gravel" had occurred because county and federal documents showed that Bocker was still the owner; and, therefore, the provisions of the CBA were enforceable. Adeline, LLC argues that considering extraneous documents provided by the Union was beyond the scope of the JGC's power to interpret the CBA. Not so. The CBA and subsequent successor agreement contained successor clauses, making the contract applicable in the event that the company was transferred to a successor or an alter ego employer—as is the case here. Therefore, it was within the scope of the CBA for the JGC to determine whether "Adeline Sand & Gravel" has been sold in such a way as to terminate the agreement. Neither Adeline, LLC nor Adeline, Inc. appeared to contest

whether a sale had in fact occurred that would alter the relationship or CBA between "Adeline Sand & Gravel" and the Union. Based on the Union's representations, the JGC found that the CBA applied and issued the grievance awards accordingly. See Prate Installations, Inc., 607 F.3d at 471. Therefore, the Court rejects Adeline, LLC's argument that the JGC exceeded its authority.

### 4. Whether the CBA is unenforceable pursuant to the one-person rule

Lastly, Adeline, LLC argues that the CBA, and therefore the JGC award, is unenforceable because Adeline, Inc. unilaterally terminated the CBA on April 1, 2009 pursuant to the one-person rule. "It is settled that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating Section 8(a)(5) of the [National Labor Relations Act], may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain." J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, 398 F.3d 967, 973 (7th Cir. 2005) (internal quotation marks and citation omitted). However, here, neither party provides sufficient evidence from which the Court could rule on this issue. It is unclear from the pleadings how many employees working at any given time—for either Adeline, Inc. or Adeline, LLC—were union members or worked in bargaining unit positions. Accordingly, this argument is rejected as undeveloped. See Hess v. Kanoski &Associates, 668 F.3d 446, 455 (7th Cir. 2012) ("This court has repeatedly explained that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (internal quotation marks and citation omitted)).

## III. CONCLUSION

For the foregoing reasons, the Court denies Adeline, LLC's petition to vacate and grants the Union's counterclaim to enforce the JGC Award.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 2, 2013